**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID HARRINGTON,**<br>Petitioner,<br>*v.*<br>**BARRY SMITH, et al.,**<br>Respondents. | **CIVIL ACTION**<br>**NO. 20-2076-KSM** |

**MEMORANDUM**

**J. Marston** **March 22, 2024**

*Pro se* petitioner David Harrington, who is presently incarcerated at SCI Houtzdale, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 27.) On June 26, 2023, the Honorable Carol Sandra Moore Wells, United States Magistrate Judge, submitted a Report and Recommendation ("R&R") rejecting all of Harrington's claims without an evidentiary hearing, and recommending that the petition be dismissed. (Doc. No. 44.) Harrington objects to the R&R. (Doc. No. 48.) For the following reasons, Harrington's objections are overruled, and the Court adopts the R&R in its entirety.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Underlying Conduct

The Superior Court of Pennsylvania detailed the facts underlying this case as follows:

> The record reflects that on May 14, 2014, at approximately 11:30 p.m. to 11:45 p.m., appellant was at home with his then-wife, Michelle Harrington, who was allegedly having an affair with Derrick Morris. At that time, appellant asked Ms. Harrington to make him a sandwich. As she went to make the sandwich, appellant pulled out a gun and forced Ms. Harrington to go to the basement with him. Once in the basement, appellant instructed the victim to chain her leg to a pipe. Appellant then went upstairs with the

> victim's cellphone. When he returned to the basement, appellant shot his then wife three times in the face. According to the Commonwealth, appellant then went back upstairs and instructed two of his children, then ages 13 and 15, to go to a neighbor's home. Appellant then returned to the basement and shot Ms. Harrington two times in the chest.
>
> After shooting his then-wife 5 times, appellant left his home and drove to Derrick Morris's home. Appellant shot Mr. Morris one time in the left eye. After shooting Mr. Morris, appellant drove to a bridge in West Philadelphia and discarded the gun. Shortly thereafter, appellant drove to the police station, turned himself in, and gave a full statement.
>
> The record further reflects that both victims survived. Ms. Harrington sustained a gunshot wound between her eyes, a gunshot wound to the left temple, and a gunshot wound to the right temple. A bullet fragment remains between her eyes. She also sustained two gunshot wounds to her chest area. Additionally, Ms. Harrington sustained multiple fractures to her face, collar bone, and chest area. Mr. Morris sustained a gunshot wound to the left eye that necessitated a cornea replacement.

*Commonwealth v. Harrington,* Nos. CP-51-CR-0007927-2014, CP-51-CR-0007928-2014, 2017 WL 2116951, at *1 (Pa. Super. Ct. May 15, 2017) (citations and footnote omitted).

### B. Guilty Plea Hearing

In April 2015, after signing a written plea colloquy (*see* Doc. No. 53 at 58–61), Harrington pleaded guilty to two counts of attempted murder, two counts of aggravated assault, one count of unlawful restraint, two counts of possession of an instrument of crime, three counts of violation of the Uniform Firearms Act, and one count of making terroristic threats. *Commonwealth v. Harrington*, Nos. 1028, 1029 EDA 2021, 2021 WL 1828486, at *1 (Pa. Super. Ct. May 7, 2021); (*see also* Doc. No. 43-1). He affirmed during his plea hearing that he had discussed the colloquy forms with his attorney,[1] that he had an opportunity to ask questions

[1] Harrington certified in his written guilty plea colloquy that his lawyer told him the elements of the crime that the District Attorney must prove to convict him. (Doc. No. 53 at 58.)

about colloquy, and that his guilty plea was knowing, intelligent, and voluntary.[2] (*See* Doc. No. 43-1 at 4.) On June 12, 2015, Harrington was sentenced to an aggregate term of twenty-six to fifty-two years.[3] *Harrington*, 2021 WL 1828486, at *1; (*see also* Doc. No. 43-2).

### C. Direct Appeal

Harrington appealed raising two issues:

> 1. Did the sentencing court err and abuse its discretion when it imposed a sentence on [appellant] without adequately considering his rehabilitative needs in the context of his tortured mental health history, in violation of 42 Pa. C.S.A. § 9721(b)?
>
> 2. Did the sentencing court impose a sentence that was contrary to the fundamental norms underlying the sentencing process because it was a *de facto* sentence of life imprisonment?

*Harrington*, 2017 WL 2116951, at *2.

The Superior Court found that Harrington admitted in a post-sentence motion that the sentencing court accounted for Harrington's rehabilitative needs and mitigating circumstances and thus he only preserved his challenge that the sentencing court imposed an excessive sentence in light of appellant's age. *Id.* The Superior Court concluded that Harrington's sentence was not unreasonable and denied his appeal.[4] *Id.* at * 3–4. Harrington did not seek *allocatur* from the Pennsylvania Supreme Court. *Harrington*, 2021 WL 1828486, at *2.

---

[2] Harrington also affirmed that although he was under the influence of Lamictal medication, he was clear-headed at the plea hearing. (Doc. No. 43-1 at 4.)

[3] Harrington was sentenced to 12.5 to 25 years for each attempted murder convicted and 1 to 2 years for the unlawful restraint offense, all to run consecutively (an aggregate sentence of 26 to 52 years of imprisonment). *Id.* The sentencing court issued either concurrent sentences or no further penalty on all the remaining convictions. *Id.*

[4] The imposition of a 12.5 to 25 year sentence for each attempted murder conviction was below the mitigating range of 16.5 to 33 years for each conviction. *Id.* at *3. Thus, there was no basis for finding Harrington's sentence was unreasonable. *Id.*

**D. PCRA Hearing**

Harrington filed a PCRA petition, as amended by appointed counsel in November 2019, claiming that his plea was unlawfully induced and that his trial counsel was ineffective for allowing Harrington to enter an involuntary and unknowing plea. *Id.* Following an evidentiary hearing on the issue of whether his trial counsel promised Harrington a sentence of ten-to-twenty years, the PCRA court denied relief, finding that Harrington's attorney did not promise such a sentence. *Id.*

**E. PCRA Appeal**

On appeal, the Superior Court affirmed, finding, based on the totality of the record, that Harrington's guilty plea was knowing, voluntary, and intelligent in light of Harrington's sworn statements and the written guilty plea colloquy, which stated that he "understood the nature of the charges to which he was pleading guilty, he recognized the rights he was giving up, he was aware of the permissible range of sentences for the offenses for which he was charged, and that he was entering the plea knowingly, voluntarily, and intelligently." *Id.* at *4. Moreover, the Superior Court found that Harrington's trial counsel's testimony supports the determination that Harrington was "adequately apprised of the sentence counsel was recommending in addition to the maximum sentence he could receive, and that he was not guaranteed a particular sentence. Likewise, . . . counsel's actions were supported by a reasonable basis designed to effectuate Harrington's interests." *Id.* at *6.

**F. Habeas Proceeding**

On April 29, 2020, Harrington filed a *pro se* habeas petition, which he then amended on August 14, 2020. (*See* Doc. Nos. 2, 5.) On January 25, 2021, Judge Wells stayed the habeas petition because Harrington's PCRA appeal was still pending. (Doc. No. 14.) Once

Harrington's PCRA appeal was terminated, Harrington filed a second amended petition raising four grounds for habeas relief:[5]

1. Trial counsel was ineffective for failing to ensure that, prior to pleading guilty, he and the trial court had adequately apprised Harrington of the consequences of pleading guilty;

2. Trial counsel was ineffective for failing to challenge the sufficiency of the bills of information;

3. Trial counsel was ineffective for failing to protect Harrington by raising available mental health defenses to the criminal charges; and

4. Trial counsel was ineffective for failing to ensure that the sentencing court applied all relevant sentencing factors when calculating Harrington's sentence.

(Doc. No. 27.) On these bases, Harrington asks this Court to vacate his guilty plea and sentence, remand for re-sentencing consistent with the Court's directives, reverse the finding of guilty and judgment of sentence, dismiss the Information with prejudice, and discharge Harrington from custody. (*Id.* at 15.) The Commonwealth of Pennsylvania opposes the petition, arguing none of Harrington's asserted constitutional claims warrant federal habeas relief and his petition should be denied without a hearing. (Doc. No. 34.)

On June 26, 2023, Judge Wells entered her R&R, finding that Harrington presents no grounds for relief and recommending that Harrington's petition be dismissed. (*See generally* Doc. No. 44.) Specifically, Judge Wells found each of the four grounds unexhausted, procedurally defaulted, and/or meritless. (*Id.*) Judge Wells also recommends the claims be dismissed without an evidentiary hearing. (*Id.* at 15.) After requesting and receiving an

[5] As Judge Wells correctly notes, Harrington's second amended petition asserting the four claims noted above controls. (Doc. No. 44 at 5 n.2.) To the extent Harrington's prior petitions included two additional claims, Harrington has conceded that those claims are based upon state law and not cognizable. (Doc. No. 41 at 3.) Thus, there is no need for Judge Wells or this Court to address them.

extension (Doc. No. 47), Harrington timely filed objections on August 23, 2023 (Doc. No. 48).

## II. LEGAL STANDARDS

### A. Standards Governing Review of a Magistrate Judge's R&R

"In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation." *Piasecki v. Ct. Com. Pl. of Bucks Cnty.*, Civil Action No. 14-7004, 2021 WL 1105338, at *3 (E.D. Pa. Mar. 23, 2021). Under that Rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections." *Id.* (quoting *Savior v. Superintendent of Huntingdon SCI*, No. 11-cv-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012)).

When a party objects to a magistrate judge's findings, the district court must make "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 673 (1980). "Ultimate adjudicatory power" resides with the district court "after receiving assistance from and the recommendation of the magistrate." *Raddatz*, 447 U.S. at 692. After reviewing the magistrate judge's conclusions, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations" and "receive further evidence, or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1); *Raddatz*, 447 U.S. at 673–74.

But "[o]bjections [that] merely rehash an argument presented to and considered by a magistrate judge are not entitled to *de novo* review" and should be overruled. *Gray v. Delbiaso*, Civil Action No. 14-4902, 2017 WL 2834361, at *4 (E.D. Pa. June 30, 2017); *see also Prout v. Giroux*, Civil Action No. 14-3816, 2016 WL 1720414, at *11 (E.D. Pa. Apr. 29, 2016) ("Where

objections do not respond to the Magistrate's recommendation, but rather restate conclusory statements from the original petition, the objections should be overruled."). Also, where a petitioner fails to "identify with specificity any legal or factual errors in the R&R," the R&R is reviewed for clear error. *Lee v. Houtzdale SCI*, 798 F.3d 159, 162 (3d Cir. 2015); *see also Kennedy v. Borough of Minersville*, No. 3:19-CV-0124, 2019 WL 4316218, at *1 (M.D. Pa. Sept. 11, 2019) ("In particular, Plaintiff does not take issue with the substance of any of the Magistrate Judge's conclusions and/or recommendations. As such, the Report and Recommendation is reviewed for clear error, and finding none, it will be adopted."); *Guzman v. Rozum*, No. CV 13-7083, 2017 WL 1344391, at *9 (E.D. Pa. Apr. 12, 2017) (explaining that "federal district courts are not required to engage in de novo review of objections to a Magistrate's R&R that lack specificity").

**B. Standards Governing Habeas Actions**

An individual in state custody may request that a federal court issue a writ of habeas corpus ordering his release. *See* 28 U.S.C. § 2254. The writ may issue "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *See id.* § 2254(a). Out of principles of comity and federalism, the availability of the writ is "narrowly circumscribed." *Shinn v. Ramirez*, 596 U.S. 366, 375 (2022). Below is a brief overview of the narrowing principles that govern the Court's review of Harrington's petition.

**1. Exhaustion of State Court Remedies**

Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies. 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the

state . . . ."). A claim is exhausted only if it was "fairly present[ed]" through all available levels of the state appellate system. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (holding that a federal claim is "fairly presented" to the state court when the petitioner includes it in a petition or brief before that court); *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) (explaining that the claim must be presented at each level of the state appellate system).

When a claim is unexhausted, and it would be futile to raise the claim in state court now, the claim is procedurally defaulted and unreviewable by a federal court. *See, e.g.*, *Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir. 2001). Procedural default renders the claim unreviewable in federal court unless the petitioner can show that: (1) the default is excused by cause and actual prejudice, or (2) failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Keller*, 251 F.3d at 415–16.

**a. Cause and Prejudice**

Under the first exception, "cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). And actual prejudice results when the errors at trial "worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Ineffective assistance of trial or direct appeal counsel can be a cause for procedural default. *Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 759 (3d Cir. 2018). In *Strickland v. Washington*, the Supreme Court established a two-pronged test that federal habeas petitioners must satisfy in ineffective assistance of counsel claims. 466 U.S. 668, 687–88 (1984). First, the petitioner must demonstrate that trial counsel's performance was objectively

unreasonable. *Id*. To do so, the petitioner must show specific acts by his counsel that fell "outside the wide range of professionally competent assistance." *Id.* When evaluating counsel's conduct, a federal court must "indulge [in] a strong presumption" that counsel acted reasonably. *Id.* at 689. Counsel's actions must be considered under the totality of the circumstances, "viewed as of the time of [said] conduct," and deference must be given to strategic decisions made by counsel. *Id.* at 689–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

Second, the petitioner must prove to a "reasonable probability" that said errors prejudiced the result in his case. *Id.* at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.* The petitioner must show how counsel's unprofessional errors "actually had an adverse effect on the defense." *Id.* at 693.

Unlike the right to effective assistance from trial and direct appeal counsel—which is grounded in the Sixth Amendment—there is no federal constitutional right to counsel in collateral proceedings. *Coleman*, 501 U.S. at 754. So, although ineffective assistance of trial and direct appeal counsel may excuse a procedural default if counsel's failures satisfy *Strickland*, ineffective assistance of collateral review counsel cannot, on its own, excuse a procedural default. *Id.* at 753–54. Nonetheless, in *Martinez v. Ryan*, the Supreme Court established an equitable exception whereby inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedurally defaulted claim of ineffective assistance of trial counsel. 566 U.S. 1, 9 (2012). Federal courts construe this exception narrowly, applying it only where the habeas petitioner was "impeded or obstructed in complying

with the State's established procedures." *Id.* at 13.

Because Pennsylvania's procedural rules dictate that a habeas petitioner should wait until initial-review collateral proceedings to raise claims of ineffective assistance of trial counsel, a habeas petitioner who was convicted under Pennsylvania law can rely on *Martinez* to excuse a procedurally defaulted *Strickland* claim. *See Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002). The Third Circuit views *Martinez* as a three-part test, requiring habeas petitioners to show that: (1) his procedural default was caused by ineffective assistance of post-conviction counsel or the absence of counsel in the initial-review collateral proceeding, (2) this ineffectiveness of counsel was raised in the first collateral proceeding when the claim could have been heard, and (3) the underlying claim of trial counsel ineffectiveness has some merit. *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014) (citing *Martinez*, 566 U.S. at 13–14). Should the petitioner fail to satisfy any of these three conditions, his claim will remain procedurally defaulted without excuse and the federal habeas court will be barred from granting it. *Id.* at 119–21.

**b. Fundamental Miscarriage of Justice**

In addition to a showing of cause and prejudice, a procedural default will be excused if the petitioner shows that the federal court's refusal to consider the claim will result in a "fundamental miscarriage of justice." *Keller*, 251 F.3d at 415. "To show a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually innocent of the crime, by presenting new evidence of his innocence." *Id.* (internal citations omitted); *see also Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995) (explaining that the petitioner must support his allegations of constitutional error with new, reliable evidence and show that this new evidence renders it "more likely than not that no reasonable juror would have convicted him").

**2. Denial on the Merits**

"[N]otwithstanding the failure of an applicant to exhaust the remedies available in the courts of the State," the federal court may deny an application for habeas relief on the merits. 28 U.S.C. § 2254(b)(2). Merits review may be preferable when, for example, the substantive issues are straightforward and the procedural bar concern involves complicated issues of state law. *Lambrix v. Singletary*, 520 U.S. 528, 525 (1997).

**3. Independent and Adequate State Court Rule**

If a petitioner shows that his claim is exhausted, the court must examine whether the state court issued a ruling on the merits of the federal constitutional claim. If the state court did not consider the merits and instead rejected the claim under an independent and adequate state rule, the claim is procedurally defaulted and cannot be considered by the federal habeas court. *See Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.") (quotation marks omitted). A state rule is independent if it is not intertwined with federal law. *Coleman v. Thompson*, 501 U.S. 722, 733 (1991). And it is adequate if it is "firmly established and regularly followed." *Johnson v. Lee*, 578 U.S. 605 (2016).

**4. Section 2254(d)**

If the state court ruled on the merits of the federal claim, the federal court must defer to the state court's ruling and deny habeas relief unless the petitioner satisfies the standard outlined in § 2254(d)(1) or (2).

Under the first subsection, the court will not defer to the state court's ruling if the petitioner shows that the state court's decision was "contrary to, or involved an unreasonable

application of, clearly established federal law." 28 U.S.C. § 2254(d)(1). For a state court decision to be "contrary to" clearly established federal law, "the state court [must] arrive at a conclusion opposite to that reached by the Supreme Court on a question of law or . . . decide[ ] a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Hameen v. Delaware*, 212 F.3d 226, 235 (3d Cir. 2000) (cleaned up). A state court decision involves an "unreasonable application of" clearly established federal law when "[it] resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* at 890. This occurs when the state court "identifie[s] the correct governing legal rule . . . but unreasonably applie[s] it to the facts of the particular . . . case" or when the state court "unreasonably extend[s] a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuse[s] to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407.

Should the petitioner fail to satisfy § 2254(d)(1), the Court will defer to the state court's ruling (and thus, deny habeas relief), unless the petitioner can show that the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). There is a presumption of correctness for factual determinations made by state court judges, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004).

## III. ANALYSIS

Harrington's habeas petition included four claims which Judge Wells addressed by grouping in two categories: (1) Claims 1 and 3, relating to trial counsel's ineffective assistance in failing to ensure that Harrington had been adequately informed of the consequences of

pleading guilty and failing to raise all available mental health defenses, and (2) Claims 2 and 4, regarding trial counsel's ineffective assistance in failing to challenge the sufficiency of the bills of information and failing to ensure the sentencing court applied all relevant sentencing factors. (*See generally* Doc. No. 27.) Judge Wells found that Claims 1 and 3 were exhausted, but that they were reasonably rejected by the state court. (*Id.* at 13–14.) And, Judge Wells found that Claims 2 and 4 were unexhausted and procedurally defaulted; she found that *Martinez* was inapplicable to excuse the default because Harrington's PCRA counsel was not deficient. (Doc. No. 44 at 8–9.) Judge Wells reasoned that PCRA counsel presented a cogent claim in PCRA proceedings, and an attorney's decision to pursue certain claims instead of others is a tactical one. (*Id.*)

Like Judge Wells, this Court addresses Harrington's objections to the R&R by grouping objections related to Claims 1 and 3 and Claims 2 and 4 together. The Court addresses each category in turn. For the reasons set forth below, the Court agrees with Judge Wells.

### A. Claims 1 and 3

Harrington's objections to the R&R on Claims 1 and 3 overlap in some instances. Relating to Claim 1, Harrington argues that the PCRA court's determination that he was not inappropriately promised a shorter sentence by his trial counsel was unreasonable in light of the evidence; relating to Claims 1 and 3, he argues that Judge Wells and the state court failed to discuss his potential mental health defenses in considering whether Harrington properly understood the nature of the charges; relating to Claim 3, he argues that the PCRA Superior Court's decision was unsupported because the court cited to a functionally blank page of his plea colloquy, and his attorney must have provided ineffective assistance of counsel because he was

also unhappy with the sentencing outcome. (Doc. No. 48 at 4–7.) The Court addresses each objection in turn.

Harrington's objections to Judge Wells' findings related to Claim 1 largely repeat the arguments in his second amended habeas petition. Harrington argued in his habeas petition that the PCRA court's finding that his attorney did not promise Harrington a ten-to-twenty-year sentence was unreasonable in light of the facts. (*See* Doc. No. 27 at 68–71.) Judge Wells found that the PCRA court had heard testimony during an evidentiary hearing on this issue and credited trial counsel's testimony over that of Harrington; she held that the federal court must accept the state court's credibility determination. (Doc. No. 44 at 13.) Harrington's objection fails to demonstrate why Judge Wells' finding that the federal court must accept state court credibility determinations is clearly erroneous. *See* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Although Harrington points to several examples of testimony provided during the evidentiary hearing[6], he fails to provide "clear and convincing evidence" that the state court's finding is incorrect. (Doc. No. 48 at 4.) *See also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."); *Stevens v. Del. Corr. Ctr.*, 295 F.3d 361, 368 (3d Cir. 2002) ("[I]n conducting a habeas analysis a federal court must presume that the factual findings of both state trial and appellate courts are correct."); *Campbell*

[6] For example, Harrington argues that his trial attorney "gave evasive answers on direct and cross examination . . . beginning with 'I really don't know,' 'I don't recall,' [etc.]." (Doc. No. 48 at 4.)

*v. Vaughn*, 209 F.3d 280, 285–86, 290 (3d Cir. 2000) (holding that the presumption of correctness under the habeas statute also applies to implicit factual findings by the state court).

Harrington also objects to Judge Wells' findings relating to Claims 1 and 3 because in deferring to the state court's finding that Harrington's guilty plea was knowing and voluntary, Judge Wells, like the state court, did not discuss how trial counsel failed to consider Harrington's potential mental health defenses. (Doc. No. 48 at 4–7.) Harrington essentially argues that his trial counsel provided ineffective assistance because counsel failed to properly inform Harrington or argue to the trial court that Harrington's mental illness could prevent a finding of the requisite *mens rea* for attempted first-degree murder (in other words, that given Harrington's mental illness, he only would have been guilty of attempted third-degree murder). Alternatively, Harrington argues that he would not have pled guilty if he had known that specific intent was a required element of attempted murder. (*Id.* at 7–8.) Harrington argues that the Superior Court's rejection of his ineffective assistance of counsel claim is not entitled to deference because it did not address Harrington's possible defenses, and only included two sentences regarding the nature of the charges in Harrington's guilty plea.[7] (*Id.* at 6.) Judge Wells found that the Superior Court's decision was reasonable because the record contains evidence indicating Harrington was informed of all relevant consequences before pleading guilty. (Doc. No. 44 at 14.)

Harrington's objections again reiterate his original habeas petition claims (*see* Doc. No. 27 at 56–57), and he has failed to demonstrate that Judge Wells' decision was clearly erroneous,

---

[7] To the extent Harrington objects to the R&R because the Superior Court did not sufficiently analyze his claims, Harrington's objections are overruled. The Superior Court spent at least three full paragraphs explaining why the record "belies Harrington's assertions" that he did not understand the nature and consequences of his plea. *See Harrington*, 2021 WL 1828486, at *3–4. Applying appropriate AEDPA deference, *see supra* Section II.B.4., the Court finds that this analysis is more than adequate to reject Harrington's claims.

or that the state court's finding on the merits was unreasonable in light of the evidence before it. To the extent Harrington argues that neither Judge Wells nor the state court addressed Harrington's potential mental health defenses, Harrington was not convicted of first-degree murder; he was convicted only of *attempted* murder, a crime which—unlike murder—has no degrees. So, the potential diminished capacity defense—which Harrington claims would have reduced the charges to attempted third-degree murder—is inapplicable.[8] [9] *See Commonwealth v. McVicker*, No. 1623 WDA 2018, 2019 WL 4392484, at *7 (Pa. Super. Ct. Sept. 13, 2019) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 734 (Pa. Super. 2004) ("In Pennsylvania, 'there simply is no such crime as attempted second or third degree murder. . . . A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. 18 Pa. C.S.A. § 901. Murder of the second or third degree occurs where the killing of the victim is the unintentional result of a criminal act. Thus, an attempt to commit second or third degree murder would seem to require proof that a defendant intended to perpetrate an unintentional killing—which is logically impossible.'"). Since the Superior Court reasonably found that Harrington's guilty plea was intelligent, knowing, and voluntary despite his incorrect claims that he could have asserted a mental health defense (*Harrington*, 2021 WL 1828486, at *4), and because this Court must defer to the state court's finding, Harrington's objection is overruled.

Harrington also objects to Judge Wells' findings related to Claim 3 because she deferred to the Superior Court's decision, which cited the plea colloquy for the proposition that

---

[8] Again, there is no such crime as attempted third degree murder.

[9] Harrington's mental health was instead properly considered at the sentencing stage, where he admits that his attorney strenuously argued on his behalf that he should be granted a lighter sentence. (Doc. No. 48 at 8.)

Harrington knew and understood the nature of the charges. (Doc. No. 48 at 6.) Harrington claims that the page the court cited did not include any substantive information. (*Id.*) Harrington raised this concern to Magistrate Judge Wells in his second amended habeas petition and merely rehashes it here (Doc. No. 44 at 39); thus, this objection is reviewed for clear error. Finding none, the Court overrules this objection. Judge Wells found that the Superior Court's decision was reasonable because the record contains evidence which indicates Harrington was informed of all relevant consequences before pleading guilty, and the Court agrees. (Doc. No. 44 at 13–14.) Harrington fails to explain why a citation to an inaccurate page of the plea colloquy demonstrates that the Superior Court's conclusion on the merits was an unreasonable determination of the facts in light of the evidence presented. The Court thus finds no clear error in Judge Wells' reasoning and overrules this objection.

Finally, Harrington objects to Judge Wells' findings related to Claim 3, arguing that his trial counsel clearly provided ineffective assistance because counsel was also upset with the sentencing outcome. (Doc. No. 48 at 6.) However, an attorney's personal dissatisfaction with an unfavorable outcome after a serious effort is insufficient to establish that he performed below an objective standard of reasonableness. *Cf. May v. Johnson*, No. CV 16-0190(MCA), 2019 WL 2113987, at *11 (D.N.J. May 14, 2019) (citing *Kim v. United States*, No. 05-3407, 2006 WL 981173, at *3 (D.N.J. Apr. 4, 2006) ("[T]hat [the petitioner] now appears unhappy with the result does nothing to change the fact that there is not the slightest indication that petitioner received ineffective assistance of counsel.")).

***

For these reasons, Harrington's objections to Judge Wells' R&R on Claims 1 and 3 are overruled.

### B. Claims 2 and 4

As discussed above, Judge Wells found in her R&R that Claims 2 and 4 are procedurally defaulted and that Harrington failed to overcome this procedural default by proving his initial PCRA counsel's deficiency under *Martinez.*[10] (Doc. No. 44 at 8–9.) Judge Wells found that because Harrington's initial PCRA counsel brought a cogent claim to the PCRA court, his decision not to bring Harrington's additional claims (which Harrington now raises on habeas review) was a tactical decision, which is insufficient to render his counsel deficient.[11] (Doc. No. 44 at 8–9.) Harrington argues that his PCRA counsel's strategy was deficient because the claims counsel raised in the PCRA petition were clearly not cognizable and were "destined to fail in its inception." (Doc. No. 48 at 4–5, 7.) He also argues that his habeas claims were meritorious and should have been raised by initial PCRA counsel. (*Id.*)

The Court need not address these arguments, because even if the Court overlooks Harrington's procedural default, Claims 2 and 4 must also be rejected because they lack merit. His second claim—that his trial counsel was ineffective for failing to challenge the sufficiency of the bills of information which were "vague, over-reaching and all encompassing" (Doc. No. 27 at 7)—fails because the bills adequately provided Harrington "fair notice of the charges against him" before he was brought to trial such that he could defend against the charges. *See Alvarez v.*

---

[10] Harrington has not argued that his procedural default is overcome because he is actually innocent; he may not do so because he has consistently admitted that he shot both victims. (*See, e.g.*, Doc. No. 27.)

[11] Judge Wells correctly found that counsel need not raise every claim advanced by his client, "but rather may select from among them." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)); *see also Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (effective appellate strategy requires "reasonable selectivity in deciding which arguments to raise"). "Th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751–52); *see also Tok v. Glunt,* No. 15-2794, 2016 WL 721280, at *5 (E.D. Pa. 2016) ("PCRA counsel, acting effectively as an appellate attorney, was entitled to select those issues on collateral review that he thought most likely to succeed on behalf of his client.").

*Respondent*, No. 19-CV-4901, 2021 WL 426622, at *2 (E.D. Pa. Feb. 5, 2021); *Saunders v. Lamas*, No. CV 12-7131, 2015 WL 9451022, at *19 (E.D. Pa. Aug. 13, 2015), *report and recommendation adopted*, No. CV 12-7131, 2015 WL 9450811 (E.D. Pa. Dec. 23, 2015). The bills of information, appended to Harrington's habeas petition (*see* Doc. No. 27), properly demonstrate that he had notice of the complainant, charge, and offense date. This information was sufficient to permit Harrington to defend against the charges. And, his fourth claim—that his trial counsel was ineffective for failing to object to the sentencing court's "refusal" to apply all relevant sentencing factors when calculating his sentence—likewise fails because this is not cognizable on habeas review. Harrington notes in his habeas petition that his trial attorney did offer argument relating to mitigating factors, including Harrington's acceptance of responsibility, his psychiatric diagnosis, and his lack of substantial criminal history, in addition to presenting witnesses who testified on Harrington's behalf. (Doc. No. 27 at 73.) Because his attorney did provide argument for the sentencing court to consider discretionary factors in Harrington's sentence, the attorney was not ineffective for failing to object to the court's consideration of those mitigating circumstances. *See Temple v. Coleman*, 3:12–CV–2615, 2013 WL 4015814, at *10 (M.D. Pa. Aug. 6, 2013) (citing *Estelle v. Gamble*, 502 U.S. at 62, 67–68 (1991) ("[H]abeas challenges to a state court's sentencing discretion are unreviewable by a federal court provided that the sentence lies within the statutory guidelines, it is not based upon arbitrary considerations, and the defendant's constitutional rights were not violated.")). Thus, Harrington's objections relating to Claims 2 and 4 are overruled.[12]

## IV. CONCLUSION

[12] To the extent Harrington argues that the R&R is deficient because Judge Wells failed to list each discretionary sentencing factor which may have been applicable to Harrington's sentencing, this objection is misguided and overruled. Judge Wells does not need to list every possible discretionary sentencing factor explicitly in her R&R in order to properly consider the claim.

For the foregoing reasons, upon consideration of Harrington's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. No. 27), the R&R (Doc. No. 44) and objections to the R&R (Doc. No. 48), this Court adopts the R&R in its entirety, denies Harrington's habeas petition with prejudice, and denies Harrington's objections to the R&R.[13] An appropriate Order follows.

[13] To the extent Harrington requests an evidentiary hearing on his habeas petition, his request is denied as he fails to meet the "high bar required to obtain an evidentiary hearing." *Cairns v. McGinley*, No. CV 19-5351-KSM, 2023 WL 5432498, at *20 (E.D. Pa. Aug. 23, 2023), *reconsideration denied*, No. CV 19-5351-KSM, 2023 WL 6543092 (E.D. Pa. Oct. 6, 2023). *See also id*. at *22 (citing *Schriro v. Landrigan*, 550 U.S 465, 474 (2007) ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.")); *id.* (citing *Campbell v. Vaughn*, 209 F.3d 280, 290 (3d Cir. 2000) ("At all events, we hold that the PCRA court made a sufficient determination of the factual issue on which Campbell's habeas appeal turns. AEDPA dictates that we must presumptively defer to this determination absent clear evidence to the contrary. As Campbell has introduced no such clear evidence, we further hold that ordering a new evidentiary hearing in this situation would be inappropriate.")) (internal citations omitted).